Case No. 24-50018

---

## THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

JANE DOE,

*Plaintiff-Appellant*,

v.

MARK A. GIPSON,

*Defendant-Appellee.*

---

On Appeal from the United States District Court for the

Western District of Texas, Austin Division

No. 1:23-cv-00463-RP

---

### REPLY BRIEF FOR PLAINTIFF-APPELLANT

---

S. Giri Pathmanaban
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Telephone:  (737) 910-7300
Facsimile:  (737) 910-7301
giri.pathmanaban@lw.com

Bradley A. Hyde
LATHAM & WATKINS LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA  92626-1925
Telephone:  (714) 540-1235
Facsimile:  (714) 755-8290
bradley.hyde@lw.com

*Attorneys for Appellant Jane Doe*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION .............................................................................1

ARGUMENT .....................................................................................3

I.    There Is No Dispute That It Is Legally Erroneous To Hold That Mr. Gipson's Testimony Can *Only* Be Discredited By Live Testimony From Another Witness ............................................................................3

II.   A Finding That The Record Evidence Does Not Sufficiently Undermine Mr. Gipson's Credibility Is Clearly Erroneous ...........................5

      A.   Mr. Gipson Fails To Grapple With The Record Evidence ..................6

      B.   Mr. Gipson's Purported Counter-Evidence Fails To Demonstrate His Credibility, And Instead Undermines It Further...........................11

III.  Additional Factors Support Reversal...............................................18

      A.   Mr. Gipson's Arguments Regarding The Remaining PI Factors Are Legally And Factually Erroneous ...............................................18

      B.   Mr. Gipson Does Not Dispute That He Threatened To Retaliate Against His Victims, Or That He Has Already Made Good On These Threats .................................................................................22

CONCLUSION ...............................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. City of Bessemer City*,
  470 U.S. 564 (1985)..................................................................1, 4, 12

*Espinoza v. Humphries*,
  No. 19-CV-1805, 2020 WL 5350489 (N.D. Tex. Aug. 19, 2020),
  *report and recommendation adopted*, 2020 WL 5332853 (N.D.
  Tex. Sept. 4, 2020)............................................................................17

*In re Luhr Bros., Inc.*,
  157 F.3d 333 (5th Cir. 1998) .................................................4, 10, 11

*People's United Equipment Finance Corp. v. Hartmann*,
  447 F. App'x 522 (5th Cir. 2011) ......................................................14

## FEDERAL STATUTES

15 U.S.C. § 6851(b)(3)(A)(ii) ...................................................................19

## STATE STATUTES

Tex. Civ. Prac. & Rem. Code Ann., ch. 98B...........................................19

Tex. Civ. Prac. & Rem. Code Ann. § 98B.007(a) ...................................21

## INTRODUCTION

Ms. Doe's opening brief detailed a years-long brutal harassment campaign by Mr. Gipson against numerous young Asian women, demonstrating a pattern of exploitation against Ms. Doe and other victims in which Mr. Gipson repeatedly threatened his victims with the distribution of their nude photographs, and then subsequently made good on those threats. Mr. Gipson fails to address or dispute *any* of these facts. This speaks volumes. Mr. Gipson does not challenge these allegations because he cannot. In fact, the *only* credibility issue Mr. Gipson challenges in his opposition briefing is whether he was properly served with the initial Complaint and TRO. But the record evidence conclusively establishes—*with photographic evidence*—that Mr. Gipson lied about not being properly served.

Mr. Gipson also does not dispute that it is legally erroneous to hold that his live testimony (that Ms. Doe purportedly gave consent to distribute nude photographs of her) can *only* be discredited by live testimony from another witness. Nor could he, as it is blackletter law that "[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). The District Court's decision contravenes that law. After Mr. Gipson testified that Ms. Doe purportedly signed a "Model Release Form" giving him consent, Ms. Doe submitted overwhelming

documentary and objective evidence showing that: (1) the signature was a crude forgery; (2) Ms. Doe explicitly told Mr. Gipson he did not have consent to distribute her nude photographs; (3) Mr. Gipson had repeatedly threatened Ms. Doe with the disclosure of her nude images in retaliation for attempting to break contact with him; and (4) Mr. Gipson had similarly harassed and improperly distributed the nude photos of numerous additional victims. Nonetheless, the District Court denied Ms. Doe's requested injunction, explaining that, in its view, it would be "impossible" for Ms. Doe to undermine Mr. Gipson's credibility because Mr. Gipson testified live, whereas Ms. Doe relied instead on sworn affidavits and other documentary evidence. That is legal error.

Mr. Gipson attempts to side-step that error by arguing that the District Court did not improperly hold that his live testimony could only be undermined by the live testimony of another witness. According to Mr. Gipson, the record evidence simply weighed against granting Ms. Doe's requested injunctive relief. But Mr. Gipson's arguments ignore the plain language of the District Court's orders, and further fail to grapple with any of the record evidence and case law cited in Ms. Doe's opening brief.

Moreover, while Mr. Gipson argues that the remaining preliminary injunction factors weigh against granting Ms. Doe relief, Mr. Gipson's arguments are both legally and factually erroneous, and the District Court already found in Ms. Doe's

favor on these factors in multiple prior rulings. Nor does Mr. Gipson dispute that the Texas Based Revenge Porn statute requires injunctive relief to be "***liberally***" construed and applied to provide timely relief to victims like Ms. Doe.

Finally, while Mr. Gipson asserts that it would be perfectly safe to force his victims to come testify at a preliminary injunction hearing against him because U.S. Marshalls and the Court itself would protect the victims, Mr. Gipson does not dispute that he has repeatedly threatened and retaliated against each victim, and even warned one such victim that "***no cop***" and "***no judge***" could protect them from him.

In short, the documentary and objective evidence cited by Ms. Doe, along with Mr. Gipson's facially implausible and internally inconsistent testimony, demonstrates that Mr. Gipson's representations to both this Court and the District Court lack credibility. Ms. Doe thus respectfully requests that the District Court's denial of her requested preliminary injunction be reversed.

## ARGUMENT

**I.    There Is No Dispute That It Is Legally Erroneous To Hold That Mr. Gipson's Testimony Can *Only* Be Discredited By Live Testimony From Another Witness**

As an initial matter, Mr. Gipson does not dispute that it is legally erroneous to hold that his live testimony can only be discredited by live testimony from another witness. Nor could he, as this Court has held that courts "***must*** also consider relevant documents or objective evidence that may contradict the witness's story and whether

3

a witness's story is internally consistent and plausible on its face." *In re Luhr Bros., Inc.*, 157 F.3d 333, 338 (5th Cir. 1998) (emphasis added) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

Instead, Mr. Gipson argues that the District Court reviewed the record evidence as a whole and simply found Ms. Doe's evidence insufficient to meet her burden. Appellee's Br. 17-18. But Mr. Gipson ignores the plain language of the District Court's orders denying Ms. Doe's requested injunctive relief, as well as the District Court's statements during the corresponding hearings. As the District Court explained in its second order denying injunctive relief, "the ***insurmountable difficulty*** for Plaintiff is that she again failed to provide any testimonial evidence to undermine the credibility of Gipson's ***live testimony*** at the first preliminary injunction hearing." ROA.802 (emphasis added). Moreover, removing any doubt that the District Court erroneously concluded that it could not find Mr. Gipson lacked credibility without ***live*** testimony from a competing witness, the District Court further explained that "[t]he Court ***cannot*** grant the extraordinary relief of a preliminary injunction on the basis of new declarations that are in direct contravention of Gipson's previous ***live testimony***." ROA.802-03 (emphasis added). And as the District Court explained during the preliminary injunction hearing, in its view, it would be "***impossible***" for the court to make a determination on Ms. Doe's

behalf without her calling live witnesses to testify. *See, e.g.*, ROA.902:6-22 (emphasis added).

Thus, the plain language of the District Court's orders denying Ms. Doe's requested injunctive relief, as well as the court's statements during the corresponding hearings, makes it clear that the court denied Ms. Doe's requested relief because it believed that Mr. Gipson's live testimony could ***only*** be discredited by competing live testimony from another witness. And since there is no dispute that such a holding is legally erroneous in view of *Anderson* and its progeny, the District Court's decision should be reversed for that reason alone.

## II. A Finding That The Record Evidence Does Not Sufficiently Undermine Mr. Gipson's Credibility Is Clearly Erroneous

As discussed above, Mr. Gipson argues that the District Court reviewed the record evidence as a whole and simply found Ms. Doe's evidence insufficient to meet her burden. Appellee's Br. 17-18. But even if the District Court did consider the entire record (rather than erroneously concluding that it would be "impossible" to find in Ms. Doe's favor absent competing live witness testimony (ROA.902:6-22)), Mr. Gipson fails to grapple with ***any*** of the record evidence Ms. Doe cites in her opening briefing undermining his credibility. Nor does Mr. Gipson attempt to traverse any of the case law Ms. Doe cites in her opening briefing. Accordingly, Mr. Gipson has thereby conceded most of the factual and legal arguments that Ms. Doe made in her opening brief. Indeed, the ***only*** credibility issue Mr. Gipson challenges

in his responsive briefing is whether he was properly served with the initial Complaint and TRO. Appellee's Br. 10-11. But as discussed further below, *infra* at 11-17, the record evidence also establishes that Mr. Gipson lied about not being properly served.

Mr. Gipson's failure to dispute or address the significant amount of documentary evidence undermining his credibility, as well as the numerous examples of internally inconsistent and facially implausible testimony he presented, strongly weighs in favor of finding that Mr. Gipson lacked credibility when he testified that he had consent to distribute Ms. Doe's nude images.

### A.     Mr. Gipson Fails To Grapple With The Record Evidence

Ms. Doe's opening brief detailed a brutal harassment campaign by Mr. Gipson targeting numerous young Asian women for exploitation, and cited to substantial record evidence undermining his credibility that he had consent to distribute Ms. Doe's nude images (or the nude images of any of his victims). *See generally* Opening Br. at *passim*. Mr. Gipson failed to dispute or address **any** of this documentary evidence, or **any** of the internally inconsistent or facially implausible testimony he provided further undermining his credibility. As discussed in Ms. Doe's opening brief, this includes the following:

- Sworn declarations, signed under penalty of perjury from Ms. Doe and Mr. Ricco Moldt attesting that they never saw, let alone signed, any "Model Release Form." ROA.6576-80; ROA.6708-10.

- Authenticated samples of Ms. Doe's and Mr. Moldt's signatures, including on Government issued IDs, showing they looked nothing like the signatures on the "Model Release Form." *Id.*

- The District Court's own observations as to the apparent lack of authenticity in the handwriting and signatures on Mr. Gipson's "Model Release Form." ROA.888:14-21; ROA.6582-83.

- Copies of text messages and emails–*authenticated by Mr. Gipson himself*–showing Ms. Doe informed Mr. Gipson he did not have consent to distribute her photographs. ROA.6588-92; ROA.868:19-870:5.

- Copies of text messages and emails–*authenticated by Mr. Gipson himself*–showing Mr. Gipson threatening Ms. Doe with the distribution of her nude images in retaliation for her ceasing contact with him, and claiming "***this will be fun***." ROA.873:1-875:4 (emphasis added) (citing ROA.1722-24).

- Screenshots off the fake Instagram profile Mr. Gipson made to impersonate Ms. Doe, which falsely claimed that she was a prostitute and a thief, and which included the URL "youfuckedwiththewrongman.com." ROA.6702; ROA.826:7-827:16; ROA.6562 (citing ROA.2282-83).

- Website captures of one of Mr. Gipson's websites that he created to distribute Ms. Doe's nude images, which further asserts that Mr. Gipson's portfolio is worth "***over a Billion USD***." ROA.3981, ROA.4035, 4064, 4190 (emphases added), and that "all profits from the collection directly support the Asian Sex Workers Fund" (ROA.6597)—*despite no such charitable fund existing*.

- Facially implausible testimony from Mr. Gipson that he purportedly only sent Ms. Doe harassing and threatening messages because he wanted Ms. Doe to file a legal action against him. ROA.848:20-849:19.

- Inconsistent testimony from Mr. Gipson that he did not know Ms. Doe's address, compared to later admissions that he sent a "cease and desist" letter directly to her Miami address. ROA.879:2-23.

- Mr. Gipson's reliance on a "Model Release Form" that is only applicable to pornographic modeling, compared to inconsistent testimony from Mr. Gipson that "I don't make pornography. I'm not a pornographer, your Honor." ROA.832:15-16.

- Facially implausible and unsupported testimony that Ms. Doe—*a woman significantly smaller than Mr. Gipson*—"knocked [him] unconscious," "broke [his] ribs," and "broke [his] nose." ROA.865:2-9.

- Facially implausible and inconsistent testimony that Mr. Gipson prides himself "on maintaining the highest standards of ethical behavior" (ROA.856:4-7), while simultaneously testifying that he frequently seeks out Asian escorts, and admittedly sent Ms. Doe harassing messages stating that Ms. Doe "has an enemy for life," and that he has sold her nude images on the dark web, and that harassing Ms. Doe "***will be fun***" (ROA.874:9-875:4 (emphasis added)).

- Mr. Gipson's admissions that he has previously been accused of online impersonation and disclosing sexual images without a person's consent. ROA.867:5-22; ROA.941.

- Facially implausible and inconsistent testimony that Mr. Gipson could not afford a lawyer (ROA.8316:14-19), compared with his testimony that he is actually a phenomenally wealthy philanthropist who has been helping ***hundreds*** of Asian sex workers around the world transition away from prostitution through his photography, and that he "financially supports" these "hundreds of other models" "who depend on [his] photography to feed their families, feed their children and provide for them" (ROA.865:25-866:14).

- Facially implausible and inconsistent testimony that Mr. Gipson had "enthusiastic" consent to publish the nude photographs of all of the women included on his websites (ROA.906:19-23), compared to other admissions that at least one of the models "refused" to sign any model release form (ROA.913:4-20), and further compared to multiple additional victim declarations attesting that Mr. Gipson did not have consent to distribute photographs for *any* of these victims (ROA.7904-8022).

- Four additional sworn declarations, signed under penalty of perjury, from other victims–*who are not parties to this litigation*–detailing nearly identical harassment and exploitation by Mr. Gipson. ROA.7904-8022.

- Documentary evidence attached to the additional victim declarations further evidencing Mr. Gipson's harassment, including one email that starts with "***Hey Whore***," and then claims the victim's "entire apartment is bugged," and which further goes on to attack the victim by saying, "***[r]ot***

8

***in hell whore,"*** "***you took advantage of the wrong man***," and "***[n]o lawyer, no n[\*]gar, no Arab, no man, no cop, no judge can fix this***," and which further states that Mr. Gipson "***WILL ENJOY THIS***." ROA.7941-48 (emphasis added).

- Additional documentary evidence attached to the additional victim declarations further evidencing Mr. Gipson's harassment, including screen captures of another Instagram account impersonating one of the victims, and showing Mr. Gipson's face, with nearly identical harassing and defamatory language as the Instagram account Mr. Gipson made to harass and defame Ms. Doe. *See, e.g.*, ROA.8019-20.

- Facially implausible, salacious, and unsubstantiated attacks against Ms. Doe in numerous filings, including allegations (without evidence), that Ms. Doe maintained "hundreds of prostitution profiles," and further has "violent bipolar disorder, severe alcoholism, and illicit drug addiction." ROA.5962; ROA.5886.

- Facially implausible, salacious, and unsubstantiated attacks against Ms. Doe's counsel, including numerous "Formal Complaint(s)" against individual attorneys on Ms. Doe's legal team, as well as Latham & Watkins LLP itself, alleging (without evidence), that these attorneys are conspiring against Mr. Gipson by hiring sex workers and fabricating evidence. ROA.399-414; ROA.415-29; ROA.430-50; ROA.523-56; ROA.587-96.

Mr. Gipson's failure to address this documentary evidence, as well as his failure to address any of the facially implausible and internally inconsistent testimony cited above speaks volumes. Put simply, Mr. Gipson does not attempt to dispute these facts because he ***cannot***. These facts, which Mr. Gipson implicitly concedes, are dispositive to the issue of whether Mr. Gipson had consent to distribute Ms. Doe's nude photographs, and thus warrant reversal of the District Court's decision.

Indeed, the only cited evidence that Mr. Gipson even cursorily addresses in his opposition briefing are the four sworn affidavits proffered by his other victims detailing similar unlawful and tortious behavior against them. Appellee's Br. 14-15. For example, Mr. Gipson infers that the similar harassment detailed in each declaration actually indicates "that there was collusion amongst the four women" in filing the affidavits, and that these sworn affidavits should be dismissed as nothing more than the "words of disgruntled former girlfriends/bikini models seeking what they apparently believe is an easy payday, all without setting foot in a courtroom." *Id.* at 14-16. But Mr. Gipson's arguments against the value of these declarations fail as a matter of law and fact.

First, as this Court has held, the testimony of individuals "with no connection to any party" is of particular value in assessing the credibility of parties who have an interest in the outcome of the litigation. *Luhr Bros.*, 157 F.3d at 340-41. Second, Mr. Gipson's allegations that these other young women are "seeking what they apparently believe is an easy payday" is plainly wrong given that: 1) these sworn affidavits were proffered in support of a request for injunctive relief, not monetary damages; and 2) these women are not parties in this litigation and thus would not share in any monetary relief. Finally, Mr. Gipson ignores the fact that the sworn declarations proffered by his additional victims were supported with *documentary*

*evidence*, including copies of communications with Mr. Gipson authenticating each victim's account. ROA.7904-8022.

Nor does Mr. Gipson address the case law cited in Ms. Doe's opening briefing, including this Court's decision in *Luhr Bros.*, which held that a district court "clearly erred" in its credibility determination after considering (1) the physical evidence presented; (2) testimony of independent and expert witnesses; and (3) the plausibility and internal consistency of the witness's version of events. 157 F.3d at 343, 339-43. As discussed in Ms. Doe's opening briefing (at 42-46), in the present case there is even more documentary evidence, and even more facially implausible and internally inconsistent testimony undermining Mr. Gipson's credibility, than was considered by this Court in *Luhr Bros.* Once again, this is not a close case, as a review of the record evidence–*which remains largely undisputed*–leaves a reasonable factfinder with a "definite and firm conviction" that the District Court clearly erred.

### B. Mr. Gipson's Purported Counter-Evidence Fails To Demonstrate His Credibility, And Instead Undermines It Further

Rather than grapple with the record evidence cited in Ms. Doe's opening briefing, the ***only*** credibility issue Mr. Gipson challenges in his responsive briefing is whether he was properly served with the Complaint and initial TRO. Appellee's Br. 10-11. But Mr. Gipson's purported counter-evidence on credibility fails as a matter of law and fact.

First, even if Mr. Gipson's testimony that he was not served with the Complaint and initial TRO was credible–*and it is not*–as a matter of law the existence of *some* evidence supporting a district court's finding does not inoculate the court's order from being found "clearly erroneous." *Anderson*, 470 U.S. at 573. As the Supreme Court explained in *Anderson*, a "'finding is 'clearly erroneous' when *although there is evidence to support it*, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id*. (emphasis added) (citation omitted). And as discussed above, in the present case, a review of the record evidence leaves a reasonable factfinder with a definite and firm conviction that a mistake has been committed.

Second, Mr. Gipson's argument that he was not properly served with the Complaint and TRO is plainly wrong, and only further demonstrates his lack of credibility. Specifically, Mr. Gipson argues that he was never properly served due to "irregularities evidenced by the process server," asserting that the process server's "certification was revoked" and further that she was supposedly indicted by a Travis County Grand Jury for impersonating a public servant (for purportedly wearing a plastic "Texas Ranger" badge on the back of her process server badge). Appellee's Br. 10-11.

As an initial matter, Mr. Gipson's allegations (at 10-11) about "irregularities" in the initial service process are supported only by his own say-so. While Mr. Gipson

cites to a letter from the Process Server Complaint Review Committee, the purported violations detailed in the letter are merely transcriptions of a complaint filed by *Mr. Gipson* against the process server. *See, e.g.*, ROA.794-97. Similarly, while Mr. Gipson alleges that the process server was "indicted" for impersonating a public servant, the only evidence that Mr. Gipson cites for this is an email correspondence with the Austin Police Department responding to a police report filed by *Mr. Gipson*. Appellee's Br. 10-11 (citing ROA.789-97, 8304-06).[1]

Moreover, other record evidence establishes that any testimony by Mr. Gipson that he was not properly served, or was not initially aware of the lawsuit, is simply not credible. For example, after being served with the Complaint and initial TRO, the process server submitted a sworn affidavit of service, which Ms. Doe filed with the Court. ROA.102-08. As discussed in the sworn affidavit of service, Mr. Gipson identified himself when the service agent stated she had two boxes for him. *See*

---

[1]    Additionally, upon reviewing these exhibits in the District Court proceedings, counsel for Ms. Doe contacted the process server in an attempt to understand whether there were any bases to these allegations. According to the process server, after serving Mr. Gipson, he began a months-long harassment campaign against her, targeting her online and filing multiple complaints against her (including those detailed above). Thus, Mr. Gipson's purported evidence of "irregularities" in service (Appellee's Br. 10-11), is nothing more than additional evidence establishing his pattern of targeting women for harassment. As discussed in Ms. Doe's opening briefing, Mr. Gipson engaged in similar conduct against Ms. Doe, asserting that she was "wanted" for multiple crimes, and filing false complaints to the Florida Medical Board in an attempt to delay her certification as an acupuncturist. *See, e.g.*, ROA.1645-57 (¶¶ 18-55).

ROA.103.  Mr. Gipson asked her to leave the boxes at his door, and the service agent observed Mr. Gipson open the door and collect the boxes with the pleadings and orders inside.  *Id*.  In her sworn affidavit, the service agent included photographs of Mr. Gipson's door after he took the two boxes.  ROA.104-08.

While Mr. Gipson later submitted an unsworn declaration that he only "discovered two empty boxes on his porch late at night on or about April 26, 2023, neither of which contained any papers or pleadings from this case" (ROA.558; ROA.561-62; ROA.599), and that the process server "may be high on methamphetamine" (ROA.602), this Court has long recognized that a "signed return of service constitutes *prima facie* evidence of valid service, which can be overcome only by strong and convincing evidence," *People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x 522, 524 (5th Cir. 2011) (citation omitted) (denying pro se defendant's motion to dismiss for improper service because defendant's "un-notarized affidavit claiming that no service was made on him" was insufficient to overcome plaintiff's *prima facie* evidence of valid service).

Notably, this is not simply a case of Mr. Gipson's word against the process server's sworn affidavit, as there is a plethora of additional evidence establishing that Mr. Gipson lied about not being served and being unaware of this lawsuit.  For example, on May 4, 2023, the District Court entered an Order to show cause against Mr. Gipson, requiring him to explain his non-compliance and failure to appear and

14

further requiring Mr. Gipson to appear for a hearing set for May 5, 2023. ROA.109.

The same day, Mr. Gipson was duly served with this order. ROA.110-12 (Proof of

Service). In the affidavit of service, the service agent noted that Mr. Gipson

identified himself, and was "aggressive." ROA.110. The affidavit of service also

included photographs of Mr. Gipson being served with the order:



ROA.112.

Despite being photographed during service of the Court's order, Mr. Gipson

failed to attend the May 5, 2023 hearing. ROA.116. Thus, the Court issued an arrest

warrant against Mr. Gipson. *Id*. For more than a month, however, Mr. Gipson

evaded arrest by simply refusing to answer the door when U.S. Marshals would

knock. ROA.145-46. Moreover, during his time evading the U.S. Marshals, Mr.

Gipson did not simply ignore the civil process, but instead used this time to dramatically ramp up his attacks on Ms. Doe and further violate the Court's TROs, creating at least fifteen websites dedicated to distributing and selling over four hundred of Plaintiff's sexually explicit photographs. *See* ROA.3706-18. Thus, on May 31, 2023, Ms. Doe filed a second emergency request for a TRO. ROA.3698-725. The next day the District Court granted Ms. Doe's Second Emergency TRO application, and on June 5, 2023, the Court issued an order "that the United States Marshals is authorized to use any lawful and reasonable means to effectuate the warrant for Gipson's arrest." ROA.145-46.

Mr. Gipson was subsequently arrested and the District Court set a contempt hearing for June 7, 2023. *See* ROA.147. At the contempt hearing, Mr. Gipson testified: (1) that he had not been served with the Complaint, associated pleadings, or any of the Court's orders; (2) that he did not "know what [he is] representing [himself] against or what the charges are"; and (3) that he had "not been aware that the U.S. Marshals [were] trying to execute a warrant." ROA.8300, 8304. However, as indicated by the testimony of Deputy David Zamora and the sworn affidavits documenting his service with photographic evidence, Mr. Gipson's representations to the court were false. Deputy Zamora testified that the United States Marshals tried to arrest Mr. Gipson "at least five" times after the May 5, 2023 bench warrant, each time announcing themselves as police and advising Mr. Gipson that there was

a warrant for his arrest.  *See, e.g.*, ROA.8313-14.  Additionally, Mr. Gipson *himself* admitted that prior to his arrest, he heard the U.S. Marshals knocking on his door and "yelling police" on at least two occasions, but did not answer because "they weren't allowed to knock the door down."  ROA.8309.

Mr. Gipson's testimony that he was not properly served is also contradicted by his ***own*** proffered evidence.  For example, Mr. Gipson emailed Plaintiff's counsel a series of videos documenting the May 4, 2023 service, and in these videos the Mr. Gipson can be heard repeatedly saying "you never served me," "you lied about serving me," "you improperly served me," "we'll talk to the judge about it," and "I have it on video though, not properly serving me."  ROA.7818-21.  Put simply, Mr. Gipson's own videos showing him attempting to evade service "amount to an admission to the process server that it would be difficult to serve him, which suggest that Defendant's conduct and resulting default were willful."  *Espinoza v. Humphries*, No. 19-CV-1805, 2020 WL 5350489, at *2 (N.D. Tex. Aug. 19, 2020), *report and recommendation adopted*, 2020 WL 5332853 (N.D. Tex. Sept. 4, 2020).

In short, Mr. Gipson's allegations that he was not properly served do not address or refute any of the record evidence Ms. Doe raised in her opening briefing, and instead only further undermine his already strained credibility.

### III.   Additional Factors Support Reversal

### A.   Mr. Gipson's Arguments Regarding The Remaining PI Factors Are Legally And Factually Erroneous

Mr. Gipson argues that Ms. Doe "failed to demonstrate any of the four factors necessary to show her entitlement to a preliminary injunction."  Appellee's Br. 11 (capitalization normalized).  As an initial matter, Mr. Gipson's opposition briefing only addresses three of the four factors (likelihood of success (*id.* at 12-15), harm to Ms. Doe (*id.* at 15-16), and public interest (*id.* at 16)).  Regardless, as discussed in Ms. Doe's opening briefing, the District Court already held in her favor with respect to two of the factors, holding that: (1) there is "a substantial risk of irreparable harm to Plaintiff if Defendant Mark A. Gipson were allowed to continue disclosing Plaintiff's intimate visual materials, impersonate her on social media, and contact her or her family"; and (2) "[a]ny potential harm to Defendant Mark A. Gipson in ceasing such conduct is minimal."  Opening Br. 48-49 (alteration in original) (quoting ROA.99).

Furthermore, following the filing of Ms. Doe's appeal, Mr. Gipson moved for a stay of the District Court proceedings, and in its order denying Mr. Gipson's requested stay, the District Court held that:

> (1) Gipson has not made a strong showing that he is likely to succeed on the merits; (2) Gipson has not demonstrated that he will be irreparably injured absent a stay; (3) issuance of the stay may substantially injure Plaintiff due to the nature of the allegations in this case; and (4) the public interest lies in denying a stay pending appeal.

18

D.I. 113 at 4-5 (filed June 6, 2024).

Moreover, each of Mr. Gipson's arguments on the preliminary injunction factors are legally and factually erroneous. For example, with respect to Ms. Doe's likelihood of success on the merits, as discussed above, the record is clear that Mr. Gipson's testimony that he had consent to share Ms. Doe's nude images lacks credibility. *Supra* at 6-11. Once again, Mr. Gipson fails to address any of Ms. Doe's cited evidence or case law in his opposition briefing.

With respect to potential harm to Ms. Doe if an injunction is not granted, Mr. Gipson argues that: (1) Ms. Doe consented to the distribution of her images; (2) many of the photographs were taken outside, where there is purportedly no reasonable expectation of privacy; and (3) Ms. Doe was purportedly "well-paid in the amount of $5500 to pose for the photographs in question." Appellee's Br. 15. But as discussed above, the record evidence shows Ms. Doe did ***not*** consent to the distribute of her images. *Supra* at 6-11. Additionally, the Federal and Texas Revenge Porn statutes make no exception for liability based on where photographs were taken (*i.e.*, whether outdoors or indoors). *See, e.g.*, 15 U.S.C. § 6851(b)(3)(A)(ii); Tex. Civ. Prac. & Rem. Code Ann., ch. 98B. Further, with respect to Mr. Gipson's allegations that Ms. Doe was "well-paid . . . $5500" to pose for the photographs, Mr. Gipson cites to ***no*** corroborating evidence for this assertion beyond his own unsworn court filings. *See, e.g.*, Appellee's Br. 15 (citing

ROA.858).  As Ms. Doe explained in her declaration in support of her initial TRO,

Mr. Gipson attempted to send her $1,500 on CashApp for purported "Model Fees,"

and Ms. Doe immediately refunded this money back.  ROA.1648 (¶ 27).  Regardless,

each of Mr. Gipson's arguments go to the issue of whether he had consent to

distribute Ms. Doe's nude images (*i.e.*, likelihood of success on the merits), not to

the issue of whether Ms. Doe would be substantially harmed from the continued

sharing of her nude photographs–*an issue in which the District Court already found

in favor of Ms. Doe*.

Finally, with respect to the public interest, Mr. Gipson argues that "[i]t is

manifestly not in the public interest for a law-abiding businessman / photographer

to have his livelihood yanked out from under him solely on the . . . words of

disgruntled former girlfriends/ bikini models seeking what they apparently believe

is an easy payday, all without setting foot in a courtroom."  Appellee's Br. 16.  First,

the record shows that Mr. Gipson is not a "law-abiding businessman / photographer,"

but rather a serial predator with a years-long history of targeting young Asian women

for exploitation.  *Supra* at 6-10; *see also* ROA.1645-57 (Doe Decl. ¶¶ 18-55);

ROA.7904-8022 (additional victim affidavits).  Second, as discussed in Ms. Doe's

opening briefing, Mr. Gipson's representations that he financially relies on his

websites is plainly false, as there is no actual ability to purchase any photographs or

merchandise from any of Mr. Gipson's websites, *i.e.*, the websites are there ***solely*** to

disparage and intimidate these victims. ROA.912:1-9.[2]  Third, as discussed above, Mr. Gipson's allegations that each of the victims are looking for "an easy payday" is plainly wrong, as: (1) these affidavits were proffered in support of a request for injunctive relief; and (2) the additional victims are not parties to the litigation, and would thus not receive any monetary damages.  *Supra* at 9-10.

Finally, while Mr. Gipson argues that "the decision to grant [injunctive] relief is to be treated as the exception rather than the rule" (Appellee's Br. 11-12), Mr. Gipson does not dispute that the Texas Revenge Porn Statute requires that a court "***liberally construe[] and appl[y]***" this chapter "to promote its underlying purpose to protect persons from, and provide adequate remedies to victims of, the disclosure or promotion of intimate visual material."  Tex. Civ. Prac. & Rem. Code Ann. § 98B.007(a) (emphasis added).

In short, each of the preliminary injunction factors weighs in favor of granting Ms. Doe her requested relief, and the applicable statutory provisions mandate that such relief should be "liberally construed and applied."  *See id.*  This further weighs in favor of reversing the District Court's decision.

---

[2]  While Mr. Gipson argues (at 15-16) that potential buyers are instructed to "contact the gallery" for purchase inquiries, Mr. Gipson offered no evidence that anyone has ever made a purchase of any of the photographs on his websites, which can be easily downloaded for free by any user visiting these websites.

**B.     Mr. Gipson Does Not Dispute That He Threatened To Retaliate Against His Victims, Or That He Has Already Made Good On These Threats**

Finally, Mr. Gipson attempts to refute Ms. Doe's arguments that there were good reasons not to force Mr. Gipson's victims to attend the preliminary injunction hearing and be cross-examined by Mr. Gipson. Appellee's Br. 18-19. Specifically, Mr. Gipson argues that "the United States District Judge has complete and total control of his courtroom," that U.S. Marshalls are also on duty to aid in protecting witnesses, and thus Ms. Doe's arguments that there were good reasons to not bring witnesses to the preliminary injunction hearing fail. *Id.* But once again Mr. Gipson ignores the actual arguments and record evidence presented in Ms. Doe's opening briefing on this issue.

First, it was completely unnecessary to force these victims to endure additional attacks by Mr. Gipson in view of the substantial record evidence establishing that Mr. Gipson did not have consent to share any of these victim's nude photographs. Opening Br. 54; *see also supra* at 6-11.

Second, while the District Court and/or U.S. Marshalls may be able to physically protect the victims while in the courtroom, this does not protect the victims from retaliation *outside* the courtroom. And Mr. Gipson does not dispute that he: (1) repeatedly threatened each of his victims and other witnesses with retaliation (*see e.g.*, ROA.2292-95; ROA.873:1-875:4; ROA.7941-48); (2) found

22

Ms. Doe's new address at least once after she moved in an attempt to escape him, and further told Ms. Doe that he had "hacked" her iCloud and could find her location at any time (Opening Br. 44, 52; ROA.879:2-23; ROA.897:24-898:2); (3) told one victim that he had "bugged" her apartment (Opening Br. 53 (quoting ROA.7910-17); (4) stated that he is "never gonna stop" trying to harm these victims (Opening Br. 53 (quoting ROA.1744); (5) stated that ***"[n]o lawyer, no n[*]gar, no Arab, no man, no cop, no judge can fix this***" (Opening Br. 45 (alterations in original) (quoting ROA.7941-48)); and (6) repeatedly stated that he would "***enjoy***" his attacks on his victims, and that it would be "***fun***" for him (Opening Br. 44-45 (capitalization normalized) (first quoting ROA.7941-48; then quoting ROA.874:9-875:3)).

In short, setting aside the emotional difficulty of unnecessarily forcing these victims to testify live against their abuser–*a man that each victim has gone to great lengths to avoid*–Mr. Gipson himself has made it clear that he will retaliate against each of his victims for any perceived action against him. And while Mr. Gipson now claims that the District Court can easily protect these victims, he previously stated: "***no cop***, [and] ***no judge***" can stop him. Opening Br. 45 (alteration in original) (emphasis altered) (quoting ROA.7941-48).

## CONCLUSION

For all the foregoing reasons, this Court should reverse the District Court's

denial of Ms. Doe's request for a preliminary injunction.

Dated:  June 21, 2024                           Respectfully submitted,

                                                */s/ Bradley A. Hyde*
                                                Bradley A. Hyde
                                                LATHAM & WATKINS LLP
                                                650 Town Center Drive
                                                Suite 2000
                                                Costa Mesa, CA  92626-1925
                                                Telephone:  (714) 540-1235
                                                Facsimile:  (714) 755-8290
                                                bradley.hyde@lw.com

                                                S. Giri Pathmanaban
                                                LATHAM & WATKINS LLP
                                                300 Colorado Street
                                                Suite 2400
                                                Austin, TX  78701
                                                Telephone:  (737) 910-7300
                                                Facsimile:  (737) 910-7301
                                                giri.pathmanaban@lw.com

                                                *Attorneys for Appellant Jane Doe*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 5,676 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point, Times New Roman type style.

Dated: June 21, 2024                          /s/ *Bradley A. Hyde*
                                                         Bradley A. Hyde

                                                         *Attorney for Appellant Jane Doe*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, the foregoing was electronically filed with the United States Court of Appeals for the Fifth Circuit through the Court's CM/ECF system in compliance with Rule 25.2.5.  I further certify that a true and correct copy of the foregoing document was served by electronic service pursuant to the Federal Rules of Appellate Procedure with the Court's CM/ECF electronic filing system on the following counsel:

> Mark McAdoo
> 1685 S Colorado Blvd., Ste. S Unit 308
> Denver, CO 80222
> Direct: 281-995-9114
> Email: mark@mcadoolawllc.com

*/s/ Bradley A. Hyde*
Bradley A. Hyde

## ECF CERTIFICATION

I hereby certify (i) the required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (ii) the electronic submission is an exact copy of the paper document pursuant to Rule 25.2.1; and (ii) the document has been scanned for viruses using Microsoft Defender and is free of viruses.

June 21, 2024

*/s/ Bradley A. Hyde*
Bradley A. Hyde